IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Regina Jensen, Vickie Rash and Rebecca Bailey<br>*Individually and on behalf of all others similarly situated*<br><br>Plaintiffs,<br><br>*v.*<br><br>Bob Evans Farms, LLC and Bob Evans Restaurants, LLC<br><br>Defendants. | Case No.<br><br>**FLSA Collective Action**<br><br>**THE FAIR LABOR STANDARDS ACT (29 U.S.C. §§ 201-219, C.F.R. § 531.35);**<br><br>**FRCP 23 Class Action (State-Law Claims)**<br><br>**West Virginia Wage Payment and Collection Act, W.Va. Code §21-5-1 et seq. (WPCA);**<br><br>**The Ohio Constitution;**<br><br>**The Ohio Minimum Fair Wage Standards Act, Ohio Revised Code Chapter 4111.01 et. seq. (MFWA)**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

Now come Plaintiffs, Regina Jensen, Rebecca Bailey, and Vickie Rash ("Plaintiffs"), on behalf of themselves and all other persons similarly situated, and for their Complaint against Bob Evans Farms, LLC and Bob Evans Restaurants, LLC (collectively "Defendants" or "Bob Evans") state and allege as follows:

### NATURE OF PLAINTIFFS' CLAIMS

1. This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §, *et seq.*, the Ohio Constitution, the Ohio Minimum Fair Wage Standards Act ("MFWSA"),

and the West Virginia Wage Payment and Collection Act, W.Va. Code §21-5-1 et seq. (WPCA) for Defendants' failure to pay Plaintiffs and other similarly-situated tipped employees all earned minimum wages.

2. Defendants own and operate over 500 Bob Evans restaurants. The restaurants in Ohio and West Virginia are the subject of this lawsuit.

3. Bob Evans Restaurants is a chain of family style restaurants founded and headquartered in Columbus, Ohio, which owns and operates approximately 523 family restaurants, primarily in the Midwest, Mid-Atlantic and Southeast regions of the United

4. As detailed herein, Defendants employed a uniform policy whereby Plaintiffs and the members of the Classes (defined below) were required to regularly work for the benefit of the Defendants while their hours were not being properly paid, classified, or recorded. As explained herein, under applicable employment laws, Plaintiffs and the members of the Classes are entitled to minimum wage for all hours worked and overtime for hours over 40 in a week. Defendants' policy required Plaintiffs and similarly situated individuals to work while they were off the clock and required them to perform non-tipped work unrelated to their tipped occupation and excessive amounts of non-tipped work even if related to their tipped occupation, while being paid the sub-minimum tip credit wage rate. As a result, Plaintiffs and members of the Classes were illegally undercompensated for their work.

5. Plaintiffs bring this case against the Defendants for willfully violating the Fair Labor Standards Act ("FLSA") and state wage laws. Plaintiffs bring the FLSA as a collective action to seek past-due wages and an equivalent amount in liquidated damages for putative class members who opt in. Plaintiffs also bring supplemental Ohio and West Virginia state-law claim

to recover broader remedies unavailable in FLSA actions. It is well-settled in this jurisdiction that Rule 23 class actions can be combined (i.e., coexist) with collective actions brought under the FLSA.

6. Defendants have a policy or practice of paying their tipped employees, including servers and bartenders, sub-minimum hourly wages under the tip-credit provisions of the FLSA ("Tip-Credit Employees").

7. Under the tip-credit provisions of the FLSA, an employer of tipped employees may,under certain circumstances, pay those employees less than the minimum hourly wage and take a "tip credit" against its minimum wage obligations. But certain non-tipped job duties can never be performed by servers paid the tip-credit wage rate (here $2.13 per hour, excluding tips), because such duties are unrelated to the tipped job. Thus, duties like preparing food or mopping the floor must always be paid at full minimum wage. *See Barnhart v. Chesapeake Bay Seafood House Assocs., L.L.C.*, No. CV JFM-16-01277, 2017 WL 1196580, at *5 (D. Md. Mar. 31, 2017) ("Duties such as 'mopping and/or deck brushing restaurant floors' and 'removing cigarette butts from the bushes outside of the restaurant,' for example, are tasks that would ordinarily be performed by a restaurant's janitorial staff. Accordingly, [the plaintiff] has . . . stated a plausible claim for relief under FLSA's 'dual jobs' regulation); *Marsh v. J. Alexander's LLC*, No. 15-15791, ---F.3d---, 2018 WL 4440364, at *16 (9th Cir. Sept. 18, 2018) ("We conclude that [the plaintiff] has stated . . . [a claim] that he is entitled to the full hourly minimum wage . . . for the time he spent on unrelated tasks"). Such duties are not those generally assigned to waitstaff, and thus no tip-credit may be taken from a nominally tipped employee for performing such work. *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 106 F. Supp. 3d 729, 732 (D.S.C. 2015); *Hart v.*

PLAINTIFFS' COMPLAINT AND JURY DEMAND

*Barbeque Integrated, Inc.*, 299 F. Supp. 3d 762, 768 (D.S.C. 2017).[1]

8.   Under the FLSA, "tipped employees who spend a substantial amount of time, or more than twenty percent of their [working time], engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work." *Irvine*, 106 F. Supp. 3d at 735 ("The twenty percent rule provides sufficient guidance to support a facially plausible claim "); *Barnhart*, 2017 WL 1196580, at *6; *Marsh*, 2018 WL 4440364, at *16 (20% rule entitled to deference).

9.   Under the FLSA, servers must be paid at least the tip-credit hourly wage for all hours worked. 29 U.S.C. § 203(m); 29 U.S.C. § 206(a). Obviously, it violates the minimum wage provision to require tip-credit employees to work "off the clock" without pay because that pushes their average compensation below that authorized by the FLSA. *See Tall v. MV Transportation*, No. 2014 WL 2964279, at *5 (D. Md. June 30, 2014).

10.  Here, Bob Evans required Plaintiffs and other servers to perform non-tipped work before, after, and during each shift, including but not limited to:

a.   Sweeping floors;

b.   Mopping floors;

c.   Taking out trash;

---

[1]     *See also* Driver v. AppleIllinois, LLC, 739 F.3d 1073, 1075 (7th Cir. 2014) (Posner, J.) (when tipped employees perform "non-tipped duties" that "are ***unrelated*** to their tipped duties . . . such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work"); *Fast v. Applebee's Int'l, Inc.*, No. 06-4146-CV-C-NKL, 2010 U.S. Dist. LEXIS 19571, *17-18 n.7 (W.D. Mo. Mar. 4, 2010) ("[t]here is no reasonable argument that cleaning bathrooms is related to occupations where food and beverages are handled even if both the bathroom and the food promote a customer's enjoyment of the restaurant.").

PLAINTIFFS' COMPLAINT AND JURY DEMAND

d.   Setting up and/or stocking steam tables with soup and chili;

e.   Setting up and/or stocking the salad case, including slicing tomatoes and cucumbers when those items were low;

f.   Setting up and stocking the expo line with mayonnaise and green onions;

g.   Portioning salad dressings;

h.   Rolling silverware;

i.   Cleaning shelves that hold paper towels, silverware, and condiments;

j.   Cleaning bread warmers;

k.   Cleaning wooden ledges and windowsills;

l.   Cleaning the soda machines;

m.   Cleaning high chairs and booster seats;

n.   Cleaning tables and placemats;

o.   Cleaning salt and pepper shakers;

p.   Making salads;

q.   Cleaning the kitchen;

r.   Cleaning ledges;

s.   Dusting fans;

t.   Washing trays; and

u.   Washing appliances

11. Plaintiffs and other servers regularly spent half of their time during shifts performing the above tasks. When Plaintiffs or other servers were assigned to open the restaurant, they were required to arrive 30 minutes before it opened to customers to set up the restaurant. In between serving customers, Plaintiffs and other servers spent extensive

time performing running side-work tasks, including cleaning tables and floors and restocking salad items and dishes. At the end of a shift after servers were no longer taking customers, Plaintiffs and other servers had to perform additional cleaning and stocking tasks. When performing this work, managers often told Plaintiffs and other servers to "get off my clock!" The managers would then clock servers out and require them to finish their non-tipped work without pay so that managers could meet Bob Evans' labor targets. When this happened, Plaintiffs and other servers regularly spent 15-30 minutes working without pay.

12. Defendants forfeited the right to take a tip credit against the minimum wages of Plaintiffs and other servers when it required them to perform improper types, and excessive amounts, of non-tipped work.

13. Defendants violated the minimum wage provisions when it required Plaintiffs and other servers to work off the clock without pay.

14. Defendants violated the FLSA by enforcing a policy or practice of paying servers sub-minimum, tip-credit wages even when they required those employees to perform non-tipped work that is unrelated to their tipped occupation (i.e., "dual jobs").

15. Defendants violated the FLSA by enforcing a policy or practice of requiring servers to perform non-tipped work that, even if it was related to their tipped occupation, exceeded 20 percent of their time worked in one or more individual workweeks.

16. Defendants violated the FLSA by paying servers sub-minimum, tip-credit wages without informing them of the tip-credit provisions of the FLSA.

17. But an employer is *not* permitted to take a tip credit against its minimum wage obligations in any of the following circumstances: (1) when it fails to inform tipped employees of the provisions of the tip-credit subsection of the FLSA; (2) when it requires its tipped employees to perform non-tipped work that is *unrelated* to the employees' tipped occupation (i.e., "dual jobs"); (3) when it requires its tipped employees to perform non-tipped work that, although related to the employees' tipped occupation, exceeds 20 percent of the employees' time worked during a workweek; or (4) when it requires tipped employees to return a portion of their tips to the employer. *See, e.g.*, 29 U.S.C. § 203(m) (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection"); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties . . . such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work"); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but non-tipped duties should be paid at the full minimum wage for that time"); *Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (defendant not permitted to take the FLSA tip credit when it took plaintiffs' tips to pay for shortages and unpaid tabs).

18. Defendants have a policy and practice of failing to inform their Tip-Credit Employees of the tip-credit provisions of the FLSA.

19. Defendants' policy and practice of failing to inform their Tip-Credit Employees of the tip-credit provisions of the FLSA while paying the sub-minimum, tip-credit wages violates the FLSA.

20. Defendants have a policy or practice of paying their Tip-Credit Employees sub-minimum, tip-credit wages even when they required those employees to perform non-tipped work that is *unrelated* to their tipped occupation (i.e., "dual jobs"), such as cleaning bathrooms, sweeping, mopping, or deck-scrubbing floors, washing dishes, rolling silverware, and cleaning the restaurant.

21. Defendants have a policy or practice of requiring Tip-Credit Employees to perform non-tipped work that, even if *related* to their tipped occupation, exceeded 20 percent of their time worked in one or more individual workweeks.

22. Defendants' policy and practice of requiring their Tip-Credit Employees to perform non-tipped work while paying them sub-minimum tip-credit wages violates the FLSA.

23. Defendants have a practice of requiring Tip-Credit Employees to pay from their tips for customer walkouts.

24. Defendants' policy and practice of requiring Tip-Credit Employees to pay from their tips for customer walkouts while paying them sub-minimum, tip-credit wages violates the FLSA.

25. Defendants may claim that they have complied with the law based upon the Department of Labor opinion letter FLSA2018-27 issued on November 8, 2018. However, every court to have considered this opinion letter, including the Northern District of Ohio, has held that the opinion letter is not entitled to any deference. *See Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d

976 (W.D. Miss. 2019); *Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019).

26. Even if this Court were to provide some deference to opinion letter FLSA2018-27, Defendants still failed to comply with the law. Defendants failed to provide proper notice, as stated in this Complaint. Defendants failed to pay even the minimum tip hourly rate, as stated in this Complaint. Defendants illegally took Plaintiff's tips, as stated in this Complaint.

27. Additionally, Defendants illegally took a tip credit for time spent performing tasks not contained in the O*NET Task list, including but not limited to, the time spent by Plaintiff making salads, cleaning the kitchen, cleaning ledges, dusting fans, washing trays, and washing appliances.

## JURISDICTION AND VENUE

28. This Court has federal question jurisdiction over Plaintiffs' FLSA claims, which arise under 29 U.S.C. § 216(b), pursuant to 28 U.S.C. §§ 1331. In addition, this Court has supplemental jurisdiction over Plaintiffs' state-law claims because those claims derive from the same common conduct that led to violations of the FLSA; that is, the FLSA and state claims all derive from the same common nucleus of operative facts.

29. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

30. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) because the Defendant is a resident of this judicial district.

31. Pursuant to Local Rule 3.8(a), this action is properly assigned to the Eastern Division of this Court.

## THE PARTIES

PLAINTIFFS' COMPLAINT AND JURY DEMAND

32. Bob Evans is an Ohio corporation and a resident of New Albany, Ohio.

33. Defendants paid Plaintiffs' straight-time hours (i.e., 40 or fewer hours each week) at a subminimum, tip-credit wage of approximately $2.13 to $4.08 per hour to work as a server at Defendants' Bob Evans restaurant.

34. Plaintiffs Jensen and Bailey reside in Athens County, Ohio.

35. Plaintiff Rash resides in Wood County, West Virginia.

36. Defendants employed Plaintiff Jensen as a server for over 20 years including at one of their Bob Evans restaurants in Parkersburg, West Virginia through approximately March, 2018, Plaintiff Rash for approximately 28 years on and-off including Parkersburg, West Virginia through approximately February, 2018 and Plaintiff Bailey at their Bob Evans restaurant in Athens, Ohio on-and-off for approximately 28 years until mid- July, 2016.

## COLLECTIVE ACTION ALLEGATIONS

37. Pursuant to 29 U.S.C. § 216(b), Plaintiffs bring this action on behalf of themselves and all other similarly-situated employees. The other similarly-situated employees are defined as follows:

> All current and former servers who worked at one of the Defendants' owned Bob Evans restaurants located in the states of West Virginia or Ohio at any time during the applicable limitations period covered by this Complaint (*i.e.*, two years prior to filing for FLSA violations, and three years prior to filing for willful FLSA violations) up to and including the date of final judgment in this matter.

38. Excluded from this definition are the Defendants, the Court and its staff, and all counsel, as well as immediate family members of the same. Moreover, Plaintiffs reserve the right to amend this definition based on discovery or legal developments.

39. Defendants are aware, or should have been aware, that federal law requires them to pay Tip-Credit Employees full minimum wage when they: (1) fail to inform Tip-Credit Employees of the tip-credit provisions of the FLSA; (2) require Tip-Credit Employees to perform non-tipped work that is (i) *unrelated* to their tipped occupation, or (ii) even if *related,* exceeds 20 percent of their time worked during individual work weeks; or (3) require Tip-Credit Employees to return a portion of their tips to the restaurants to cover the cost of customer walkouts.

40. Plaintiffs are similarly situated to Defendants' other Tip-Credit Employees because those employees were also paid sub-minimum hourly wages while they were subject to Defendants' illegal policy or practice of: (1) failing to inform them of the tip-credit provisions of the FLSA; (2) requiring them to perform non-tipped work that is (i) *unrelated* to their tipped occupation, or (ii) even if *related,* exceeds 20 percent of their time worked during individual work weeks.

41. There are numerous similarly-situated current and former Tip-Credit Employees who worked at Defendants' Bob Evans restaurants in West Virginia or Ohio who would benefit from the Court authorizing issuance of notice of this lawsuit so that these employees may opt in to this action.

42. Similarly-situated Tip-Credit Employees are known to Defendants and are identifiable in Defendants' payroll records.

## WEST VIRGINIA CLASS DEFINITIONS AND RULE 23 ALLEGATIONS

43. West Virginia Plaintiffs bring the Claims for Relief for violation of West Virginia's Wage Payment and Collection Act.  West Virgia Plaintiffs Jensen and Rash bring these claims on behalf of themselves and all members of the following class (the "West Virginia

PLAINTIFFS' COMPLAINT AND JURY DEMAND

Class") comprised of:

## A. West Virginia Class

All persons formerly employed by Defendants in West Virginia at any time five years prior to the filing of this Complaint through class certification who resigned their employment with Defendants and were not paid all wages owed within the time(s) mandated by the Wage Payment and Collection Act.

## B. Rule 23 Allegations

### 1. Numerosity (Rule 23(a)(1)).

44. The potential quantity of members of the proposed West Virginia Class as defined is so numerous that joinder of all members would be unfeasible and impractical. Plaintiffs are informed and believe that the total number of formerly employed members of the West Virginia Class number is in the thousands.  The quantity and identity of such membership is readily ascertainable via inspection of the Defendants' employment and payroll records.

## 2. Existence of Common Questions of Law and Fact (Rule 23(a)(2)).

45. There are common questions of law and fact as to the members of the West Virginia Class which predominate over questions affecting only individual members which include, but are not limited to, the following:

a. Whether Defendants failed to keep accurate records of all hours worked and wages earned by members of the West Virginia Class;

b. Whether Defendants failed to pay members of the West Virginia Class the minimum wage in violation of the WPCA.

c. Whether the members of the West Virginia Class are entitled to compensatory damages, and if so, the means of measuring such damages;

d. Whether the members of the West Virginia Class are entitled to injunctive relief;

e. Whether the members of the West Virginia Class are entitled to restitution; and

f. Whether Defendants are liable to members of the West Virginia Class for attorneys' fees and costs.

## 2. Typicality (Rule 23(a)(3)).

46. The claims of the West Virginia Plaintiffs (Jensen and Rash) are typical of the claims of all members of the West Virginia Class they seek to represent because all members of the West Virginia Class sustained injuries and damages arising out of Defendants' common scheme to maximize profits by skimming wages.

## 3. Adequacy Rule (23(a)(4)).

47. Plaintiffs Rash and Jensen are adequate representatives of the proposed West Virginia Class they seek to represent because will fairly protect the interests of the members of the West Virginia Class, they have no interests antagonistic to the members of the West Virginia Class, and they will vigorously pursue this suit via attorneys who are competent, skilled and experienced in litigating matters of this type.

## 4. Injunctive and Declaratory Relief (Rule 23(b)(2)).

48. Injunctive Relief is appropriate pursuant to Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the members of the West Virginia Class, so that final injunctive relief as requested herein is appropriate respecting the West Virginia Class as a whole.

## 5. Predominance and Superiority of Class Action (Rule 23(b)(3)).

49. The nature of this action and the nature of the laws available to members of the West Virginia Class make the use of the class action format particularly efficient and the appropriate procedure to afford relief to them for the wrongs alleged herein, for the following reasons:

a. By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation;

b. This case involves a large number of individual class members with many relatively small claims. If each individual member was required to file an individual lawsuit, the Defendants would necessarily gain an unconscionable advantage because it would be able to exploit and overwhelm the limited resources of each individual class member with its vastly superior financial and legal resources;

c. Requiring each individual member to pursue an individual remedy would also discourage the assertion of lawful claims by class members, who would be disinclined to pursue action against Defendants because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being;

d. Proof of a common business practice to maximize profits through wage theft will provide the common proof to establish liability against Defendants;

e. Absent class treatment, the prosecution of separate actions by the individual members of the West Virginia Class, even if possible, would likely create:

a. a substantial risk of each individual plaintiff presenting in separate, duplicative proceedings the same or essentially similar arguments and evidence, including expert testimony;

b. a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants;

c. inconsistent or varying verdicts or adjudications; and

d.  potentially incompatible standards of conduct for Defendants.

f.  The claims of the individual members of the West Virginia Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attendant thereto;

g.  Courts seeking to preserve efficiency and other benefits of class actions routinely fashion methods to manage any individual questions; and

h.  Judicial precedent urges trial courts, which have an obligation to consider the use of innovative procedural tools to certify a manageable class, to be procedurally innovative in managing class actions.

50. Finally, adjudicating this action on a class basis is appropriate because liability turns on Defendants' own uniform and systematic scheme to maximize profits by depriving its employees of wages, overtime wages, and forcing them to work off the clock. Class-wide liability can be determined through manageable devices of common proof such as statistical random sampling, survey evidence based on scientific principles, representative testimony, documentary evidence, and Defendants' common policies and practices.  Once liability is determined, the damages suffered by each member can also be determined by the same common proof.

51. Plaintiffs do not contemplate class notice if the West Virginia Class is certified under Rule 23(b)(2), which does not require notice, and notice to the putative Class may be accomplished through publication, or other forms of distribution, if necessary, if the Class is certified under Rule 23(b)(3), or if the Court otherwise determines class notice is required. Plaintiffs will, if notice is so required, confer with Defendants and seek to present the Court with a stipulation and proposed order on the details of a class notice program.

PLAINTIFFS' COMPLAINT AND JURY DEMAND

## West Virginia Common Factual Allegations

52. Defendants paid Plaintiffs less than minimum wage to work as servers. Plaintiffs were not informed by Defendants' of the tip-credit provisions of the FLSA. Defendants also required Plaintiffs to "reimburse" expenses to the restaurant from tips in violation of the FLSA.

53. While paying them sub-minimum wage, Defendants required Plaintiffs to spend over twenty percent of their work time in one or more individual workweeks performing *related* non-tipped work, and required them to perform *unrelated* non-tipped duties that had no customer interaction and that did not generate tips. A non-exhaustive list of these duties follows:

a. Sweeping floors;

b. Mopping floors;

c. Taking out trash;

d. Setting up and/or stocking steam tables with soup and chili;

e. Setting up and/or stocking the salad case, including slicing tomatoes and cucumbers when those items were low;

f. Setting up and stocking the expo line with mayonnaise and green onions;

g. Portioning salad dressings;

h. Rolling silverware;

i. Cleaning shelves that hold paper towels, silverware, and condiments;

j. Cleaning bread warmers;

k. Cleaning wooden ledges and windowsills;

l. Cleaning the soda machines;

m.  Cleaning high chairs and booster seats;

n.  Cleaning tables and placemats;

o.  Cleaning salt and pepper shakers;

p.  Making salads;

q.  Cleaning the kitchen;

r.  Cleaning ledges;

s.  Dusting fans;

t.  Washing trays; and

u.  Washing appliances.

54. Defendants' requirement that Plaintiffs and the putative class portion food while working on tip credit required a substantial amount of time. This task alone often takes more than an hour during a shift.

55. Bob Evans restaurants, including those owned and operated by Defendants, operate as a chain concept, so that customers can obtain essentially the same food and drink items, and experience the same customer service, at all Bob Evans restaurants.

56. Defendants trained their Bob Evans employees, including Tip-Credit Employees and store managers, to perform the same, or essentially the same, job duties. This identical training is delivered regardless of the location where they are assigned to work.

57. During the Plaintiffs' employment, Defendants permitted servers to transfer between their Bob Evans' restaurants.

58. Defendants require their Tip-Credit Employees to perform non-tipped work each shift in addition to serving customers.

59. During the Plaintiffs' employment, checklists were posted in Defendants' restaurants with numerous non-tipped duties that servers were required to perform in addition to serving customers.

60. During the Plaintiff's employment, managers verified that severs performed the non-tipped work covered in the checklists.

61. When Plaintiffs and other Tip-Credit Employees performed non-tipped work, they did not interact with customers and did not have the opportunity to earn tips.

62. Defendants require Tip-Credit Employees to perform non-tipped work before their restaurants are open to customers.

63. Defendants require Tip-Credit Credit Employees to perform non-tipped work after they are finished serving customers and/or their restaurants are closed to customers.

64. During Plaintiff's employment, Defendants had no policies prohibiting Tip-Credit Employees from performing certain types, or excessive amounts, of non-tipped work.

65. During Plaintiff's employment, Defendants did not record or track the amount of time Tip-credit Employees spent performing non-tipped work.

66. Defendants' managers at their restaurants are eligible to receive bonuses based, in part, on meeting or exceeding certain labor cost targets.

67. Defendants can create different "clock in" codes that would allow their Tip-Credit Employees to clock in at the full minimum wage rate when performing non-tipped work, while clocking in at a sub-minimum, tip-credit rate when serving customers.

68. Defendants did not allow their Tip-Credit Employees to clock in at the full minimum wage rate when performing the non-tipped work described in this Complaint, although Defendants had the capacity and even though it was implied in their contract of

PLAINTIFFS' COMPLAINT AND JURY DEMAND

employment that they would do so.

69. Defendants also routinely clocked Plaintiffs and the putative class out and required them to do significant work while clocked out, sometimes in excess of two hours at the close.

## OHIO CLASS DEFINITIONS AND RULE 23 ALLEGATIONS

70. Ohio Plaintiff (Bailey) brings Claims for Relief for violations of the Ohio Constitution and Ohio's MWFSA. Plaintiff bring these claims on behalf of herself and all members of the following class (the "Ohio Class") comprised of:

**A. Ohio Class**

All current and former servers and bartenders who worked at one of the Defendants' owned Bob Evans' restaurants located in the state of Ohio at any time during the applicable limitations period covered by the filing of this Complaint (three years prior to filing) up to and including the date of final judgment in this matter.

**B. Rule 23 Allegations**

**1. Numerosity (Rule 23(a)(1)).**

71. The potential quantity of members of the proposed Ohio Class as defined is so numerous that joinder of all members would be unfeasible and impractical. Plaintiffs are informed and believe that the total number of current and formerly employed members of the Ohio Class number is in the thousands. The quantity and identity of such membership is readily ascertainable via inspection of the Defendants' employment and payroll records.

**2. Existence of Common Questions of Law and Fact (Rule 23(a)(2)).**

72. There are common questions of law and fact as to the members of the Ohio Class which predominate over questions affecting only individual members which include, but are not limited to, the following:

a. Whether Defendants failed to keep accurate records of all hours worked and wages earned by members of the Ohio Class;

b. Whether Defendants failed to pay members of the Ohio Class the minimum wage in violation of Ohio law.

c. Whether the members of the Ohio Class are entitled to compensatory damages, and if so, the means of measuring such damages;

d. Whether the members of the Ohio Class are entitled to injunctive relief;

e. Whether the members of the Ohio Class are entitled to restitution; and

f. Whether Defendants are liable to members of the Ohio Class for attorneys' fees and costs.

### 6. Typicality (Rule 23(a)(3)).

73. The claims of the Plaintiff (Bailey) is typical of the claims of all members of the Ohio Class she seeks to represent because all members of the Ohio Class sustained injuries and damages arising out of Defendants' common scheme to maximize profits by skimming wages.

### 7. Adequacy Rule (23(a)(4)).

74. Plaintiff Bailey is an adequate representative of the proposed Ohio Class she seeks to represent because she will fairly protect the interests of the members of the Ohio Class, she has no interests antagonistic to the members of the Ohio Class, and she will vigorously pursue this suit via attorneys who are competent, skilled and experienced in litigating matters of this type.

### 8. Injunctive and Declaratory Relief (Rule 23(b)(2)).

75. Injunctive Relief is appropriate pursuant to Rule 23(b)(2) because Defendants

have acted or refused to act on grounds generally applicable to the members of the Ohio class, so that final injunctive relief as requested herein is appropriate respecting the Ohio Class as a whole.

**9. Predominance and Superiority of Class Action (Rule 23(b)(3)).**

76. The nature of this action and the nature of the laws available to members of the Ohio Class make the use of the class action format particularly efficient and the appropriate procedure to afford relief to them for the wrongs alleged herein, for the following reasons:

a. By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation;

b. This case involves a large number of individual class members with many relatively small claims. If each individual member was required to file an individual lawsuit, the Defendants would necessarily gain an unconscionable advantage because it would be able to exploit and overwhelm the limited resources of each individual class member with its vastly superior financial and legal resources;

c. Requiring each individual member to pursue an individual remedy would also discourage the assertion of lawful claims by class members, who would be disinclined to pursue action against Defendants because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being;

d. Proof of a common business practice to maximize profits through wage theft will provide the common proof to establish liability against Defendants;

PLAINTIFFS' COMPLAINT AND JURY DEMAND

e. Absent class treatment, the prosecution of separate actions by the individual members of the Ohio Class, even if possible, would likely create:

a. a substantial risk of each individual plaintiff presenting in separate, duplicative proceedings the same or essentially similar arguments and evidence, including expert testimony;

b. a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants;

c. inconsistent or varying verdicts or adjudications; and

d. potentially incompatible standards of conduct for Defendants.

f. The claims of the individual members of the Ohio Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attendant thereto;

g. Courts seeking to preserve efficiency and other benefits of class actions routinely fashion methods to manage any individual questions; and

h. Judicial precedent urges trial courts, which have an obligation to consider the use of innovative procedural tools to certify a manageable class, to be procedurally innovative in managing class actions.

77. Finally, adjudicating this action on a class basis is appropriate because liability turns on Defendants' own uniform and systematic scheme to maximize profits by depriving its employees of wages, overtime wages, and forcing them to work off the clock. Class-wide liability can be determined through manageable devices of common proof such as statistical random sampling, survey evidence based on scientific principles, representative testimony, documentary evidence, and Defendants' common policies and

practices. Once liability is determined, the damages suffered by each member can also be determined by the same common proof.

78. Plaintiffs do not contemplate class notice if the Ohio Class is certified under Rule 23(b)(2), which does not require notice, and notice to the putative Class may be accomplished through publication, or other forms of distribution, if necessary, if the Class is certified under Rule 23(b)(3), or if the Court otherwise determines class notice is required. Plaintiffs will, if notice is so required, confer with Defendants and seek to present the Court with a stipulation and proposed order on the details of a class notice program.

## Ohio Common Factual Allegations

79. Defendants paid Plaintiffs less than minimum wage to work as servers. Plaintiffs were not informed by Defendants' of the tip-credit provisions of the FLSA. Defendants also required Plaintiffs to "reimburse" expenses to the restaurant from tips in violation of the FLSA.

80. While paying them sub-minimum wage, Defendants required Plaintiffs to spend over twenty percent of their work time in one or more individual workweeks performing *related* non-tipped work, and required them to perform *unrelated* non-tipped duties that had no customer interaction and that did not generate tips. A non-exhaustive list of these duties follows:

a.  Sweeping floors;

b.  Mopping floors;

c.  Taking out trash;

d.  Setting up and/or stocking steam tables with soup and chili;

e.  Setting up and/or stocking the salad case, including slicing tomatoes and cucumbers

PLAINTIFFS' COMPLAINT AND JURY DEMAND

when those items were low;

f. Setting up and stocking the expo line with mayonnaise and green onions;

g. Portioning salad dressings;

h. Rolling silverware;

i. Cleaning shelves that hold paper towels, silverware, and condiments;

j. Cleaning bread warmers;

k. Cleaning wooden ledges and windowsills;

l. Cleaning the soda machines;

m. Cleaning high chairs and booster seats;

n. Cleaning tables and placemats;

o. Cleaning salt and pepper shakers;

p. Making salads;

q. Cleaning the kitchen;

r. Cleaning ledges;

s. Dusting fans;

t. Washing trays; and

u. Washing appliances

81. Defendants' requirement that Plaintiffs and the putative class portion food while working on tip credit required a substantial amount of time. This task alone often takes more than an hour during a shift.

82. Bob Evans restaurants, including those owned and operated by Defendants, operate as a chain concept, so that customers can obtain essentially the same food and drink items, and experience the same customer service, at all Bob Evans restaurants.

83. Defendants trained their Bob Evans employees, including Tip-Credit Employees and store managers, to perform the same, or essentially the same, job duties. This identical training is delivered regardless of the location where they are assigned to work.

84. During the Plaintiffs' employment, Defendants permitted servers to transfer between their Bob Evans' restaurants.

85. Defendants require their Tip-Credit Employees to perform non-tipped work each shift in addition to serving customers.

86. During the Plaintiffs' employment, checklists were posted in Defendants' restaurants with numerous non-tipped duties that servers were required to perform in addition to serving customers.

87. During the Plaintiff's employment, managers verified that severs performed the non-tipped work covered in the checklists.

88. When Plaintiffs and other Tip-Credit Employees performed non-tipped work, they did not interact with customers and did not have the opportunity to earn tips.

89. Defendants require Tip-Credit Employees to perform non-tipped work before their restaurants are open to customers.

90. Defendants require Tip-Credit Credit Employees to perform non-tipped work after they are finished serving customers and/or their restaurants are closed to customers.

91. During Plaintiff's employment, Defendants had no policies prohibiting Tip-Credit Employees from performing certain types, or excessive amounts, of non-tipped work.

92. During Plaintiff's employment, Defendants did not record or track the amount of time Tip-credit Employees spent performing non-tipped work.

93. Defendants' managers at their restaurants are eligible to receive bonuses based, in part, on meeting or exceeding certain labor cost targets.

94. Defendants can create different "clock in" codes that would allow their Tip-Credit Employees to clock in at the full minimum wage rate when performing non-tipped work, while clocking in at a sub-minimum, tip-credit rate when serving customers.

95. Defendants did not allow their Tip-Credit Employees to clock in at the full minimum wage rate when performing the non-tipped work described in this Complaint, although Defendants had the capacity and even though it was implied in their contract of employment that they would do so.

96. Defendants also routinely clocked Plaintiffs and the putative class out and required them to do significant work while clocked out, sometimes in excess of two hours at the close.

**I. Defendants Violated the FLSA by Requiring Plaintiff and Class Members to Perform Substantial Non-Tip-Producing Tasks Without Being Paid Minimum Wage.**

97. Under the FLSA, as interpreted by the Department of Labor (the "DOL"), employers may not take the tip credit for time the employee is engaged in a non-tipped job and instead must pay their employees at the standard minimum wage. The DOL has formalized this concept under the "Dual Jobs" regulation which states as follows:

**Dual jobs**. In some situations, an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee . . . is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man.

98.  The Dual Jobs regulation imposes both quantitative and qualitative

PLAINTIFFS' COMPLAINT AND JURY DEMAND

restrictions on the employer's ability to take the tip credit for non-tip-producing tasks, as explained in the DOL's Field Operations Handbook (the "Handbook" or "FOH").

99. The quantitative restriction limits the amount of time an employee can spend on tasks related to the tipped occupation, as follows:

100. 29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee. For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses. FOH § 30d00(e)(2) (rev. 668, June 20, 2012).

101. The Handbook continues: [W]here the facts indicate that tipped employees spend a substantial amount of time (in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance.

102. This "20 percent tolerance," which is one method of determining whether an employee is effectively engaged in a dual jobs position, is referred to as the "20 Percent Rule." Courts have routinely utilized this quantitative standard.

103. The qualitative aspect of the Dual Jobs regulation prohibits taking the tip credit for work that is "not related to the tipped occupation. For example, maintenance work (e.g., cleaning bathrooms and washing windows) are not related to the tipped

occupation of a server; such jobs are non-tipped occupations." FOH § 30d00(e)(4).

104.    Defendants instituted a policy requiring Plaintiffs and Class Members to work dual jobs that included tipped tasks (directed toward producing tips) and substantial non-tip-producing tasks ("Non-Tipped Work"), exceeding 20 percent of their time, for which they were not paid the applicable minimum wage.

105.    Defendants have a policy and practice of paying Plaintiffs and Class Members, sub-minimum, tip-credit wages, even when Defendants require them to perform Non-Tipped Work that is not related to their tipped occupation, such as baking bread and performing other tasks, including but not limited to those previously set forth in this Complaint, not related to their tipped occupation.

106.    Even if the Non-Tipped Work Defendants require Plaintiff and Class Members to perform was related to their tipped occupation, Defendants violate the FLSA by its policy and practice of requiring Plaintiffs and Class Members to perform such work for more than 20 percent of their time worked during the workweek.

107.    Plaintiffs were required to perform substantial non-tip-producing tasks for more than 20 percent of her hours in the workweek without being paid a minimum wage.

108.    Plaintiffs were also required to perform tasks that were unrelated to and not incidental to her tip-producing occupation without being paid a minimum wage.

109.    Defendants' policy and practice of requiring Plaintiffs and Class Members to perform excessive and/or unrelated Non-Tipped Work while paying them sub-minimum, tip-credit wages violates the FLSA.

**II. Defendants Violated the FLSA by Failing to Pay Plaintiffs and Class Members for Off-the-clock Work.**

110.    Defendants encourage Plaintiffs and Class Members to work off the

clock by limiting the hours that they are permitted to be clocked in.

111.  Defendants require Plaintiffs and Class Members to perform substantial non-tip-producing work when they are clocked in.

112.  Defendants have refused to pay Plaintiffs and Class Members minimum wage for non-tip-producing work that exceeds 20 percent of the hours in a workweek.

113.  Plaintiffs and Class Members worked off the clock without pay, with the knowledge, expectation, and acquiescence of Defendants.

114.  Defendants clocked Plaintiffs and Class Members out yet required them to remain to complete multiple tasks.

115.  The willful refusal to pay wages for off-the-clock work constitutes a violation of the FLSA.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT
**(Minimum Wage and Overtime, On Behalf of Themselves and the FLSA Class)**

116.  Plaintiffs re-allege and incorporate the previous paragraphs of this Complaint as if fully set forth in this cause of action.

117.  This cause of action arises from Defendants' violation of the FLSA for their failure to pay minimum wages and overtime pay to Plaintiffs and similarly-situated Tip-Credit Employees.

118.  Plaintiffs bring this cause of action as a collective action under the FLSA, § 216(b).

119.  Plaintiffs' consent forms are attached here.

120.  During the entire course of Plaintiffs' employment at the Bob Evans

PLAINTIFFS' COMPLAINT AND JURY DEMAND

Restaurants, Defendants were Plaintiffs' "employer" as defined by the FLSA, 29 U.S.C. § 203(d).

121.     During the entire course of Plaintiffs' employment at the Bob Evans Restaurants, Plaintiffs were Defendants' "employee[s]" as defined by the FLSA, 29 U.S.C. § 203(e)(1).

122.     During the entire course of their employment by Defendants, Plaintiffs were not exempt from the minimum wage or overtime provisions of the FLSA.

123.     In one or more individual workweeks during their employment, Plaintiffs' average compensation (*i.e.* total weekly compensation divided by total weekly hours), excluding tips, fell below minimum wage.

124.     Defendants are, individually and collectively, an "enterprise" as defined by the FLSA, § 203(r)(1).

125.     Defendants are, individually and collectively, an enterprise(s) engaged in commerce or the production of goods for commerce within the meaning of the FLSA, § (203)(s)(1)(A).

126.     Defendants' annual gross volume of sales made, or business done, has exceeded $500,000 in each of the last three calendar years.

127.     Defendants' individual Bob Evans' restaurant(s) are engaged in related activities performed for a common business purpose, through unified operation or common control, including through use of common management employees, payroll, human resource and public relations functions, and personnel policies and practices that are alleged herein to violate the FLSA.

128.     Defendants violated the FLSA by requiring Plaintiffs and similarly-

situated Tip-Credit Employees to perform non-tipped work that is *unrelated* to their tipped occupation, while paying them less than minimum wage, such as: cleaning bathrooms, sweeping, mopping, or deck scrubbing floors, washing dishes, and cleaning the restaurant.

129. Defendants also violated the FLSA by requiring Plaintiffs and similarly-situated Tip-Credit Employees to perform non-tipped work that, even if *related* to their tipped occupation, exceeded twenty percent of their time worked in one or more individual workweeks without paying them full minimum wage.

130. Defendants violated the FLSA by taking a tip credit against the minimum wages of Plaintiffs and similarly-situated Tip-Credit Employees without informing them of the tip credit provisions of the FLSA.

131. Defendants violated the FLSA by not paying overtime pursuant to the FLSA.

132. Defendants' violations of the FLSA were willful.

## COUNT II
### VIOLATION OF THE FAIR LABOR STANDARDS ACT - UNPAID WAGES (On Behalf of themselves and the FLSA Class)

133. Plaintiffs, on behalf of themselves and the FLSA Class, repeats and re-alleges all allegations above as though they are fully set forth herein.

134. At all relevant times, Defendants have been and continue to be an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

135. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Class Members within the meaning of the FLSA.

136. At all relevant times, Defendants had a uniform policy and practice of

knowingly permitting Plaintiffs and Class Members to work off the clock without compensation.

137.     Defendants' policy and practice of not paying minimum wage for non-tip-producing work caused Plaintiffs and Class Members to be paid an incorrect and illegally low sub-minimum hourly rate of pay.

138.      Defendants' conduct constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a). Due to Defendants' FLSA violations, Plaintiffs and the Class Members were damaged and are entitled to recover from Defendants compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs, and expenses of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT III
### VIOLATION OF WEST VIRGINIA WPCA-(On Behalf of West Virginia Plaintiffs (Jensen and Rash) and the West Virginia Class) W. Va. Code §21-5-1, *et seq.*

139.     Plaintiffs hereby incorporate all allegations set forth in all the foregoing paragraphs as though fully alleged herein.

140.     Defendants are employers of Plaintiffs and members of the West Virginia class within the meaning of the WPCA.

141.     Implied into the contract of employment between Bob Evans and its servers is that the servers would switch from tip-credit to minimum wage when completing tasks that are non-tip generating.

142.     Defendants failed to timely pay West Virginia Plaintiffs and other similarly situated West Virginia class members all wages owed to them within the time periods mandated by the WPCA for employees pursuant to W. Va. Code § 21-5-4(b).

143.     As a result of the foregoing, Plaintiffs and the members of the West

PLAINTIFFS' COMPLAINT AND JURY DEMAND

Virginia Class have been damaged in an amount to be determined at trial.  The WPCA contains a five year statute of limitations regardless of whether or not the violation was willful (the "West Virginia Class Period."). Therefore, the West Virginia Plaintiff and members of the West Virginia Class are entitled to treble damages and attorneys' fees and costs and other relief, including penalties and interest, for the five-year statute of limitations as this Court deems appropriate and just.

<u>COUNT IV</u>
**VIOLATION OF ARTICLE II, §34A OF THE OHIO CONSTITUTION AND THE OHIO MFWSA – (ON BEHALF OF THEMSELVES AND THE OHIO CLASS)**

144.    Plaintiff hereby incorporates all allegations set forth in all the foregoing paragraphs as though fully alleged herein.

145.    The Ohio MFWSA, §4111.01 (A) defines "wage" as including the reasonable cost to the employer of furnishing "facilities," in language which tracks the FLSA, 203(m) definition of "wage." *However,* the cost of furnishing "facilities" which are primarily for the benefit of the employer – such as uniforms – are not "reasonable" and may not be included in wages. See 29 CFR Sect. 531.3(d)(1) and (2); *Mitchell v. Abercrombie and Fitch. Co*, 429 F. Supp2d 725, 732 (S.D. Ohio, 2006), *affirmed,* 225 Fed.Appx. 362, 2007 WL 930398 (Courts have uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA)(citing *Douglas v. Argo-Tech Corp*., 113 F.3d 67 n. 2 (6th Cir. 1997)(noting that Ohio's wage and hour law "parallels the FLSA" and approaching the Ohio law and the FLSA in a "unitary fashion" is appropriate.

146.    Defendants violated the minimum wage provision of the Ohio MWFSA § 4111.01 (A) by deducting from Plaintiffs and similarly situated Tip-Credit Employees the cost of required uniforms which reduced their wages below the tip-credit minimum wage required by

PLAINTIFFS' COMPLAINT AND JURY DEMAND

the Ohio Constitution in one or more work weeks.

75. As also alleged above, Plaintiffs and members of the Ohio Class were consistently and uniformly not paid the applicable minimum wage or overtime pay for all the work they performed in the course of their employment for Defendants. Defendants' unlawful conduct was neither inadvertent nor *de minimus*, but widespread, repeated and part of a pattern and practice of conduct affecting Ohio Plaintiffs and all members of the Ohio Class.

76. As a result of the foregoing, Plaintiff and the members of the Ohio Class have been damaged in an amount to be determined at trial. The Ohio Constitution contains a three year statute of limitations regardless of whether or not the violation was willful (the "Ohio Class Period."). Therefore, the Ohio Plaintiff and members of the Ohio Class are entitled to treble damages and attorneys' fees and costs and other relief, including penalties and interest, for the three-year statute of limitations as this Court deems appropriate and just.

### Prayer for Relief

WHEREFORE, Plaintiff, on behalf of herself and similarly-situated Tip-Credit Employees, prays for judgment against Defendants as follows:

A.  For an order certifying that the First Two Claims for Relief of this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and that prompt notice of this action be issued to potential members of the opt-in FLSA Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims;

B.  For an order certifying that the Third Claim for Relief be maintained as a class action pursuant to Rule 23 on behalf of the members of the West Virginia Class who were either employed or who performed work in the State of West Virginia during the West Virginia Class Period and that notice of the pendency of this action be provided to members of the

West Virginia Class.

C. For an order certifying that the Fourth Claim for Relief be maintained as a class action pursuant to Rule 23 on behalf of the members of the Ohio Class who were either employed or who performed work in the State of Ohio during the Ohio Class Period and that notice of the pendency of this action be provided to members of the Ohio Class.

D. Designation of Plaintiffs as the Class Representatives for the FLSA Class;

E. Designation of Plaintiffs Jensen and Rash as the Class Representatives for the West Virginia Class;

F. Designation of Plaintiff Bailey as the Class Representatives for the Ohio Class;

G. Designation of Plaintiffs' attorneys as Class Counsel for the FLSA Class, the West Virginia Class, and the Ohio Class;

H. A declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

I. Appropriate equitable relief to remedy Defendants' violations of state law, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

J. For an award of unpaid Federal minimum wages for each hour worked as required by the FLSA, 29 U.S.C. §206;

K. All unpaid overtime as calculated by the applicable provision of the FLSA, 29 U.S.C. §§ 201 et seq., and applicable regulations promulgated in the Code of Federal Regulations and/or opinions and directives of the Department of Labor;

L. All appropriate state and federal statutory penalties;

M. An award of compensatory damages to the extent available, liquidated damages pursuant to the FLSA and the WPCA, and restitution to be paid by Defendants according to proof;

N.  Unpaid overtime premium compensation as provided by federal law for overtime hours worked;

O.  Pre-Judgment and Post-Judgment interest, as provided by law;

P.  Attorneys' fees and costs of suit, including expert fees and fees pursuant to West Virginia law and as permitted by the FLSA

Q.  Judgment in the amount of the owed minimum wages for all time worked by Plaintiffs and similarly-situated Tip-Credit Employees;

R.  Liquidated damages in an amount equal to the amount of unpaid minimum wages for the FLSA class and equal to twice the amount for the West Virginia Class and the Ohio Class;

S.  Such other and further relief as this Court deems just and proper

Respectfully submitted,


s/Michael L. Fradin
LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
mike@fradinlaw.com
8 N. Court St. Suite 403
Athens, Ohio 45701
Telephone: 847-986-5889
Facsimile: 847-673-1228